Nicholson, C. J.,
delivered the opinion of the Court.
On the 17th of November, 1860, Woodward recovered a judgment before a Justice of the Peace, in Sumner county, against Neely, for $205, which was stayed. On the 5th of February, 1866, an execution issued on this judgment, which was superseded by Neely, upon the ground that on the 5th of March, 1862, he paid it in full to W. F. Andrews, the officer who served the warrant. The proof before the jury on the issue of payment was, that the attorney of Woodward took out a warrant and handed it to Andrews, a Deputy Sheriff, to be served on Neely; that the attorney attended at the trial and obtained judg *496 ment, the officer, Andrews, not having had the note, and having given no receipt for its collection; all he did was to serve the warrant and return it to the Justice, his name being marked on the docket as the returning officer. The Justice’s docket shows no issuance of any execution until February, 1866, when the one superseded issued, but on the docket the following entry is found: “ Satisfied in full, March <5, 1862. Paid in Confederate bonds and money, $232. (Signed) W. F. Andrews.” The Justice, who has possession of the docket is under the impression that this entry was not on the docket when it came into his possession, which was after the death of Bennett, who rendered the judgment in 1863. He says, Andrews had access to the docket. Neely produced on the trial a receipt in Andrew’s handwriting, dated March 5, 1862, in these words: “Received of H. M. Neely, two. hundred and thirty-two dollars, in full of fi. fa. in favor of Woodward v. Neely. (Signed) W. F. Andrews, D. Sheriff.”
The plaintiff, Woodward, requested the Court to charge the jury, “ that if Andrews, the Deputy Sheriff, collected the amount of the debt against Neely in Confederate money, without the consent of Woodward, Woodward would not be bound by his action.” The Court declined to give the instruction. What instructions were given to the jury, the record does not show. We are to presume then that the charge was correct and satisfactory on all other matters except as to the point specially requested, and hence that it was not inserted in the bill of exceptions.
*497 We can very well see that several questions of fact and of law may have been involved in the trial of the cause, which can not now be considered by us.
The jury found that Neely had paid the debt, and the court accordingly quashed the execution. The only matter left open for our determination is, whether the Circuit Judge erred in declining to instruct the jury that if the Deputy Sheriff collected the executions in Confederate money, without the consent of Woodward, he would not be bound by the act of the officer. This proposition assumes that Andrews had an execution and had it as a collecting officer.
In such case this Court has determined that as an officer is bound to make the money on an execution, he is authorized to receive in payment the currency which is at the time circulating in money, and that such payment would be a satisfaction of the execution, without the consent of the creditor. We have recognized a distinction between a collection by an agent who voluntarily received Confederate money in payment of the debt of his principal, without his instructions or consent, express or implied, and an officer who is required by law to maké the collection.
It is in proof that Andrews was not intrusted in the usual way with the collection of the note, he gave no receipts, and did not take the note into possession, nor did he take out a warrant; all he did was to execute and return the warrant.
The plaintiff’s attorney attended the trial and obtained judgment, which was in November, 1860. These facts clearly indicate that Andrews had no au *498 thority as an officer to do anything more than to serve the warrant. Although the receipt given by him to defendant in the judgment in 1863 recites that the payment was made on a ji. fa., yet the docket of the Justice shows that no execution was ever issued until 1866. This fact, in connection with the strong intimation of the Justice that Andrews had extended the satisfaction on the docket long after the date of the receipt, raises a presumption that Andrews collected the money without any execution. This being so, the case does not fall within the rule laid down in Turner v. Collier, but within the rule governing the case of a collection by a private agent. It does not appear that Andrews had any authority express or implied to receive the money, or to enter satisfaction on the docket, or that after he received it, his act was in any way recognized or ratified, expressly or impliedly, by plaintiff in the judgment. We are therefore of opinion that the Circuit Judge erred in refusing to give the instruction to the jury asked for, and revoke the judgment and remand the cause for another trial.